# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: September 25, 2025

```
* * * * * * * * * * * * *
VIRGINA FISHER,                    *
                                   *
        Petitioner,                *    No. 24-1732V
                                   *
v.                                 *    Special Master Young
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
        Respondent.                *
* * * * * * * * * * * * *
```

*Virginia Fisher*, *pro se*, Hornell, NY, for Petitioner.
*Mary Eileen Holmes*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION ON ENTITLEMENT[1][2]

On October 23, 2024, Virginia Fisher ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018). Petitioner alleged that she suffered Guillain-Barré Syndrome[3] ("GBS") and/or chronic inflammatory demyelinating polyneuropathy[4] ("CIDP") as the result of

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Although Respondent filed his Rule 4(c) Report and Motion to Dismiss together, because this was not filed as a motion itself, this opinion is styled as a decision on entitlement and not a ruling on Respondent's motion.

[3] GBS is a "rapidly progressive ascending motor neuron paralysis of unknown etiology, frequently seen after an enteric or respiratory infection." *Guillain-Barré Syndrome*, DORLAND'S MED. DICTIONARY ONLINE, https://www.dorlandsonline.com/dorland/definition?id=110689 (last visited Sept. 24, 2025)

[4] CIDP is "a slowly progressive, autoimmune type of demyelinating polyneuropathy characterized by progressive weakness and impaired sensory function in the limbs and enlargement of the peripheral nerves, usually with elevated protein in the cerebrospinal fluid." *Chronic Inflammatory Demyelinating Polyneuropathy*, DORLAND'S MED. DICTIONARY ONLINE.

an influenza ("flu") vaccine administered on September 7, 2021. Pet. at 1, ECF No. 1. Respondent argued against compensation, asserting that Petitioner's claim was time-barred. Resp't's Report at 16, n. 21, ECF No. 26.

After carefully analyzing and weighing the evidence presented in this case in accordance with the applicable legal standards, I find that Petitioner's case is time-barred by the statute of limitations under the Vaccine Act. Accordingly, Petitioner is not entitled to compensation.

I. **Procedural History**

Petitioner filed her petition, *pro se*, alleging GBS and/or CIDP on October 23, 2024. Pet. Petitioner then filed medical records on December 17, 2024, and a statement of completion on January 30, 2025. Pet'r's Exs. 1–2, ECF No. 11; Pet'r's Exs. 3–8, ECF No. 12. Following a status report from Respondent, Petitioner filed additional medical records between April 15, 2025, and May 29, 2025, and a statement of completion on June 16, 2025. Pet'r's Exs. 9–11, ECF No. 16; Pet'r's Ex. 12, ECF No. 18; Pet'r's Ex. 13, ECF No. 20; ECF No. 21.

Respondent filed his Rule 4(c) Report, opposing compensation, on September 11, 2025. Resp't's Report. In addition to other arguments, Respondent asserted that Petitioner's claim was time-barred, based on both (alternative) onset dates alleged by Petitioner. *Id.* at 16, n. 21. That is, Petitioner's petition was filed on October 23, 2024; therefore, if Petitioner's alleged symptoms began with either her September 2021 knee instability or her October 10, 2021 vomiting and nausea, her claim would be outside of the three-year statute of limitations imposed by 42 C.F.R. § 100.3-16(a)(2). *Id.* Accordingly, Respondent argued Petitioner's "claim would [] be time barred by the statute of limitations." *Id.*

On September 24, 2025, I held a recorded status conference between the parties to discuss the contentions made in Respondent's Rule 4(c) Report. Min. Entry, docketed Sept. 24, 2025. During the status conference I asked Petitioner to clarify the date of her symptom onset. She remembered the date was October 15, 2021, based on her attendance at a birthday party when she began to experience her nausea and vomiting symptoms.

This matter is now ripe for consideration.

II. **Factual History**

Prior to vaccination, Petitioner's medical history was significant for headaches, left shoulder pain status-post arthroscopy, right lower extremity pain and swelling, right knee pain, Hashimoto's thyroiditis[5] with multinodular goiter, hypertension, tenosynovitis of the left wrist, bilateral carpal tunnel syndrome, bilateral De Quervain's tenosynovitis, gastroesophageal reflux

---

[5] Hashimoto's disease is "a progressive type of autoimmune thyroiditis with lumphocytic infiltration of the gland and circulation antithyroid antibodies." *Hashimoto's Disease*, DORLAND'S MED. DICTIONARY ONLINE.

2

disease, and obesity status-post gastric bypass surgery in June 2021. Pet'r's Ex. 1 at 63, 434, 438, 487, 496, 540, 545, 548, 555; Pet'r's Ex. 11 at 132, 146, 151, 171, 174, 177, 180, 189, 193, 197.

On September 7, 2021, Petitioner presented to her primary care provider, physician assistant ("PA") Heather Novotny, at Southport Family Practice for follow-up of her chronic medical conditions. Pet'r's Ex. 1 at 420–21. Petitioner reported that she was "still having leg cramps" and was experiencing constipation after her bariatric surgery that she was managing with over-the-counter medication. *Id.* at 421. A physical examination by PA Novotny revealed no abnormalities. *Id.* at 422. Petitioner received a seasonal flu vaccination during this visit. *Id.* at 239.

Approximately two weeks later, on September 24, 2021, Petitioner presented to PA Novotny with complaints of right calf pain and bruising for two days. Pet'r's Ex. 3 at 413. She also reported that her right leg "gave out" when she went to stand the night before. *Id.* at 414. A physical examination revealed crepitus[6] and tenderness to palpation. *Id.* at 415. PA Novotny was concerned about deep vein thrombosis[7] ("DVT"); however, imaging revealed no acute abnormalities. Pet'r's Ex. 1 at 74. During an appointment with PA Novotny on October 1, 2021, Petitioner again complained of right leg pain with right knee "instability." Pet'r's Ex. 3 at 399–401. Physical examination continued to reveal crepitus and tenderness to palpation, and an X-ray demonstrated evidence of degenerative joint disease with numerous osteophytes. *Id.* at 188, 401.

On October 12, 2021, Petitioner presented to Guthrie Emergency Room ("ER") for evaluation of nausea and vomiting for four days. Pet'r's Ex. 3 at 390. Petitioner acknowledged that she had been experiencing frequent episodes of nausea and vomiting since her gastric bypass surgery in June 2021. *Id.* Petitioner's neurologic examination was normal, and she displayed no weakness in her arms or legs. *Id.* at 391. Petitioner's symptoms improved in the ER after administration of intravenous fluids and medication for nausea. *Id.* at 393. She was discharged in the early morning hours of October 13, 2021, with a diagnosis of "nausea." *Id.*

Twenty-four hours later, on October 14, 2021, Petitioner presented to Davenport ER with continued complaints of nausea and vomiting. Pet'r's Ex. 11 at 395, 397. She continued to deny neurologic symptoms and her neurological examination was normal. *Id.* at 399, 401. An abdominal computed tomography ("CT") scan showed no abnormalities, and Petitioner was discharged with a diagnosis of "noninfective gastroenteritis and colitis." *Id.* at 402, 412–14. On October 20, 2021, Petitioner attended a "sick visit" with her bariatric surgeon. Pet'r's Ex. 9 at 12–15. At this appointment, she reported a ten-day history of nausea and vomiting with burning epigastric pain, despite the use of Protonix and Carafate. *Id.* at 12. She had lost 90 pounds in the four months since her surgery. *Id.* Examination revealed mild abdominal tenderness to palpation, and Petitioner was diagnosed with acute gastritis, nausea, and intestinal malabsorption status-post bariatric surgery. *Id.* at 13.

---

[6] Crepitus is "the discharge of flatus from the bowels." *Crepitus*, DORLAND'S MED. DICTIONARY ONLINE.
[7] Deep vein thrombosis is "thrombosis of one or more deep veins, usually of the lower limb, characterized by swelling, warmth, and erythema." *Deep Vein Thrombosis*, DORLAND'S MED. DICTIONARY ONLINE.

On November 11, 2021, Petitioner was transported by ambulance to Arnot Ogden ER, where she reported a one-month history of worsening gastrointestinal complaints, diplopia[8] and headache for one week, and numbness in the lower extremities. Pet'r's Ex. 9 at 85, 90, 139–40. Upon her arrival, Petitioner was able to ambulate independently, and physical examination of Petitioner revealed no focal neurologic deficits, no paresthesias, intact sensation, and normal cranial nerve and neuromuscular exam. *Id.* at 89–90, 142. Petitioner did display "non-fatigable nystagmus[9] horizontal and vertical." *Id.* at 91. She was admitted to the hospital with diagnoses of intractable nausea and vomiting and diplopia. *Id.* at 143–44; Pet'r's Ex. 11 at 383.

On November 12, 2021, during an evaluation with hospitalist Bharathi Thuraisamy, MD, Petitioner again reported that her diplopia began one week prior. Pet'r's Ex. 9 at 192. Physical examination revealed weakness in the bilateral lower extremities; however, Carlos Martinez, MD, who also evaluated Petitioner on November 12 on behalf of the surgery department, indicated that there was "[n]o identifiable cause for her neurologic complaints." *Id.* at 193, 207. On both November 11 and November 12, 2021, Petitioner tested positive for COVID-19. *Id.* at 184, 430.

Petitioner was reevaluated by Dr. Thuraisamy on November 14, 2021. Pet'r's Ex. 9 at 310. At that time, she reported some improvement in her nausea and vomiting but a continued inability to tolerate solid foods and continued leg weakness, which was causing difficulty ambulating. *Id.* Dr. Thuraisamy noted that he suspected that Petitioner was experiencing "nutritional induced myopathy,"[10] and ordered physical and occupational therapy evaluations. *Id.* at 311. During an occupational therapy session the next day, Petitioner had full active range of motion in her lower extremities with intact sensation. *Id.* at 355–56. However, she had difficulty transitioning from sitting to standing due to weakness. *Id.* at 355. She was noted to be at risk for falling. *Id.*

Due to Petitioner's continued diplopia and leg weakness, she was evaluated by the neurology department on November 16, 2021. Pet'r's Ex. 9 at 427. Physical examination by Sherrie Smart, nurse practitioner ("NP"), revealed cranial nerve palsy and slight left facial droop, 4/5 left arm strength, 3/5 bilateral lower extremity strength, and "difficulty eliciting lower extremity reflexes" with decreased sensation to temperature and vibration. *Id.* at 429–30. NP Smart opined that "[i]t does appear that [Petitioner] has COVID related [GBS] with cranial nerve deficits." *Id.* at 430. Petitioner was referred for a lumbar puncture and a five-day course of intravenous immunoglobulin ("IVIG"). *Id.* Later that day, hospitalist Stephen Lee, MD, reported that Petitioner's lumbar puncture showed albuminocytologic dissociation with markedly elevated protein level consistent with GBS. *Id.* at 448.

By November 24, 2021, Dr. Thuraisamy was reporting that Petitioner's extremity weakness had "significantly improved" after IVIG. Pet'r's Ex. 10 at 379–80, 426–27. Her left eye was no longer drooping, and her double vision had also improved, but she continued to experience

---

[8] Diplopia is "the perception of two images of a single object." *Diplopia*, DORLAND'S MED. DICTIONARY ONLINE.

[9] Nystagmus is "an involuntary, rapid, rhythmic movement of the eyeball." *Nystagmus*, DORLAND'S MED. DICTIONARY ONLINE.

[10] Myopathy is "any disease of the muscle." *Myopathy*, DORLAND'S MED. DICTIONARY ONLINE.

nystagmus. *Id.* On December 2, 2021, Petitioner was discharged to inpatient rehabilitation, where she remained for three weeks. Pet'r's Ex. 13 at 2, 4–5.

After her discharge from inpatient rehabilitation, Petitioner presented for a February 8, 2022 follow-up appointment with PA Novotny. Pet'r's Ex. 3 at 360. At that time, Petitioner had regained 5/5 bilateral upper extremity strength but continued to display decreased strength in the bilateral hip flexors, quadriceps, and hamstrings. *Id.* At a March 31, 2022 appointment with PA Novotny, Petitioner mentioned that she was attending physical therapy ("PT") and treating with a neurologist. Pet'r's Ex. 1 at 57. On May 13, 2022, Petitioner reported to PA Novotny that she had recently undergone magnetic resonance imaging ("MRI") of her pelvis and lumbar spine to evaluate for "secondary causes" of her lower extremity symptoms. *Id.* at 51. That same month, at an appointment with orthopedist Brett Auerbach, it was noted that Petitioner continued to receive IVIG infusions for treatment of her GBS. *Id.* at 44.

On March 9, 2023, Petitioner presented to PA Novotny for "Transitional Care Management" after being hospitalized in mid-February 2023 for increasing weakness and vision changes. Pet'r's Ex. 1 at 31. Per Petitioner, who was 37 weeks pregnant at the time, "[n]eurology felt [her symptoms were] an exacerbation [of her GBS] and treated her with [intravenous] steroids." *Id.* Physical examination by PA Novotny revealed cranial nerve deficit (bilateral lid lag), decreased upper extremity reflexes, and absent patellar reflexes. *Id.* at 33–34. PA Novotny diagnosed Petitioner with weakness, visual changes, and GBS, and noted that Petitioner's symptoms were likely exacerbated by her pregnancy. *Id.* at 34. Petitioner was advised to continue care with her neurologist and obstetrician. *Id.*

At an April 17, 2023 visit with PA Novotny, Petitioner, who was three weeks postpartum, requested to restart Cymbalta,[11] which she had stopped taking during pregnancy but had previously provided her with significant relief from her neuropathy. Pet'r's Ex. 1 at 27. She continued to display absent patellar reflexes but had 5/5 lower extremity strength bilaterally. *Id.* at 29. At a follow-up visit one month later, Petitioner reported that she had restarted Cymbalta and that her neuropathy symptoms were "well controlled." *Id.* at 18.

On August 3, 2023, Petitioner again presented to PA Novotny for "Transitional Care Management" after being admitted to the hospital for a "CIDP flare." Pet'r's Ex. 1 at 11. Petitioner reported that she had been referred to the ER by her neurologist after "presenting to an appointment with increased bilateral lower extremity weakness to the point where she could not stand." *Id.* Petitioner further reported that while hospitalized, she was treated with a three-day course of intravenous steroids, which improved her symptoms, and that she continued to receive monthly IVIG infusions. *Id.* Physical examination by PA Novotny revealed bilateral ptosis,[12] diminished reflexes in the upper extremities, and absent patellar reflexes. *Id.* at 12. PA Novotny diagnosed Petitioner with CIDP and advised Petitioner to continue treatment with her neurologist. *Id.* at 13.

---

[11] Cymbalta is the "trademark for a preparation of duloxetine hydrochloride." *Cymbalta*, DORLAND'S MED. DICTIONARY ONLINE.

[12] Ptosis is the "drooping of the upper eyelid." *Ptosis*, DORLAND'S MED. DICTIONARY ONLINE.

Petitioner also continued to complain of generalized weakness, which she attributed to GBS, at an August 23, 2023 appointment with Dr. Auerbach. Pet'r's Ex. 1 at 1.

On January 25, 2024, Petitioner presented to the ER with complaints of headache, eye pain, "fluctuation in lower extremity weakness," and diplopia. Pet'r's Ex. 7 at 5. She was admitted to the neurology service, whose notes reflect that Petitioner had undergone electromyogram ("EMG") studies in March 2022 and December 2023, with results "not consistent with CIDP." *Id.* at 10. Due to Petitioner's headache and "recent" IVIG infusion, she underwent an MRI of the brain, which ruled out thrombosis, intracranial hemorrhage, acute infarction, and other acute intracranial disease processes. *Id.* at 5. Physical examination revealed bilateral ptosis, eyelid fatigability, positive Cogan's twitch, and positive ice pack test; decreased biceps and brachioradialis reflexes; and negative triceps, patellar, and Achilles reflexes. *Id.* at 13. Petitioner had "mostly" returned to her neurologic baseline by the next day. *Id.* at 9. She was discharged with primary diagnoses of left-sided headache and "[c]oncern for myasthenia gravis"[13] and secondary diagnoses of nutritional neuropathy and hypothyroidism; provided with a referral to rheumatology; and prescribed pyridostigmine. *Id.* at 4, 8.

On February 21, 2024, Petitioner presented for a new patient evaluation with NP JoAnn Gilette at the office of rheumatologist Sara Khalil "for evaluation of possible underlying autoimmune disorder." Pet'r's Ex. 8 at 1. Petitioner complained of tingling in her hands, leg weakness, and loss of balance; however, physical examination revealed no neurologic deficit and normal musculoskeletal functioning. *Id.* at 3–4. NP Gilette diagnosed Petitioner with undifferentiated connective tissue disease, inflammatory arthritis, Hashimoto's thyroiditis, and psoriasis and advised Petitioner to begin taking Plaquenil.[14] *Id.*

No further medical records were filed.

### III.   Legal Standards

The Vaccine Act was established to compensate vaccine-related injuries and deaths. § 10(a). "Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award 'vaccine-injured persons quickly, easily, and with certainty and generosity.'" *Rooks v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 1, 7 (1996) (quoting H.R. Rep. No. 908 at 3, *reprinted in* 1986 U.S.C.C.A.N. at 6287, 6344).

Section 16(a)(2) of the Vaccine Act governs claims resulting from vaccines administered after October 1, 1988, and reads,

---

[13] Myasthenia gravis is "an autoimmune disease of neuromuscular function due to the presence of antibodies to acetylcholine receptors at the neuromuscular junction." *Myasthenia Gravis*, DORLAND'S MED. DICTIONARY ONLINE.

[14] Plaquenil is the "trademark for a preparation of hydroxychloroquine sulfate." *Plaquenil*, DORLAND'S MED. DICTIONARY ONLINE.

if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 16(a)(2). Therefore, claims resulting from vaccines administered after October 1, 1988 must be filed within 36 months of the first symptom or manifestation of onset of the alleged vaccine-related injury. The statute of limitations begins to run from the onset of the first objectively cognizable symptom, whether or not that symptom is sufficient for diagnosis. *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Special masters have appropriately dismissed cases that were filed outside the limitations period, even by a single day or two. *See, e.g., Spohn v. Sec'y of Health & Hum. Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond the 36-month limitations period), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997); *Cakir v. Sec'y of Health & Hum. Servs.*, No. 15-1474V, 2018 WL 4499835, at *4 (Fed. Cl. Spec. Mstr. July 12, 2018).

### IV.  Analysis

The parties do not dispute that the petition was untimely filed. Petitioner's medical records note an ER visit on October 12, 2021, with complaints of vomiting and nausea for four days prior. Pet'r's Ex. 3 at 390. Furthermore, during our September 24, 2025 conference call, Petitioner admitted that the onset of her symptoms was approximately October 15, 2021. She remembered the date because she was attending a birthday party when she began feeling nauseous and vomiting. This is consistent with an October 14, 2021 ER visit, wherein Petitioner complained of continued nausea and vomiting. Pet'r's Ex. 11 at 395, 397. It is notable that at the time of her ER visits, Petitioner related her symptoms back to her gastric bypass surgery from June of 2021. Whether Petitioner's symptoms began as early as October 8, 2021, or as late as October 15, 2021, the 36-month statute of limitations would have expired prior to October 23, 2024, the date Petitioner filed her petition. Accordingly, I agree with the parties that the petition was untimely pursuant to § 16(a)(2).

### V.  Conclusion

For the reasons discussed above, I find that Petitioner's vaccine-related claim is time-barred. Therefore, I must DISMISS the petition.

**IT IS SO ORDERED**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master
